UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD CAMPBELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 3:19-cv-00730 |
| | ) |
| ADHEREHEALTH, LLC (f/k/a | ) |
| PHARMMD SOLUTIONS, LLC), | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Following his termination, Richard Campbell brought this action against his former employer AdhereHealth, LLC[1] ("AdhereHealth") under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and Tennessee common law. Before the Court is AdhereHealth's Motion to Dismiss (Doc. No. 11; see also Doc. No. 12) Campbell's ADA and state law claims. Campbell has responded in opposition (Doc. No. 19), and AdhereHealth has replied (Doc. No. 20). For the following reasons, AdhereHealth's Motion to Dismiss will be granted.

### I.    FACTUAL ALLEGATIONS AND BACKGROUND[2]

In December 2015, Campbell began working for AdhereHealth as a Senior Ruby Developer, which is a computer coding position specializing in the "Ruby" programming

---

[1] According to the Complaint, PharmMD Solutions, LLC ("PharmMD") did business in its own name at all relevant times in this action but is now doing business as AdhereHealth. (Doc. No. 1 ("Compl.") ¶ 13.) For ease of reference, the Court will refer to PharmMD as AdhereHealth. But by doing so, the Court is not deciding whether or to what extent AdhereHealth is PharmMD's successor in interest.

[2] The Court draws most of the facts in this section from the Complaint (Doc. No. 1) and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551

language. (Compl. ¶¶ 18–21.) AdhereHealth provided Campbell a laptop computer to perform his job, and he and several of his coworkers regularly worked from home and enjoyed a flexible work schedule. (Id. ¶¶ 22–29.) Indeed, although Campbell had an assigned workspace, he worked remotely most of the time and would sometimes go weeks without coming into the office. (Id. ¶¶ 28–29.)

In April 2017, Campbell received laparoscopic surgery for an inflamed gallbladder, which unfortunately caused additional complications requiring another surgery and hospitalization. (Id. ¶¶ 30–33.) Campbell continued having cognitive difficulties after these surgeries, but he participated in medical treatment and physical therapy and returned to work on May 22, 2017. (Id. ¶¶ 34–35.) However, Campbell's work suffered, and in October 2017 he received his "first written warning" for his job performance. (Id. ¶¶ 22, 37; Doc. No. 1-3 at 2.) In March 2018, following his write-up, Campbell requested FMLA leave from May 7, 2018 through July 2, 2018 so he could obtain further medical treatment. (Id. ¶¶ 38–41.) Campbell alleges that beginning in April 2018, AdhereHealth no longer allowed him to telework or have a flexible work schedule. (Id. ¶ 40.) He further alleges that on April 27, 2018, AdhereHealth placed him on a "leave of absence" until his FMLA leave began on May 7, 2018. (Id. ¶¶ 41–43.)

On June 30, 2018, Campbell informed AdhereHealth that he needed additional medical leave until August 1, 2018 but could return to work with reasonable accommodations, including taking one day off per week until December 2018. (Id. ¶¶ 48–51.) A week later, Campbell

---

U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint"). The Court draws the remaining facts from the relevant EEOC charging documents. See Williams v. Steak 'N Shake, No. 5:11CV833, 2011 WL 3627165, at *3 (N.D. Ohio Aug. 17, 2011) (collecting cases and noting that the Court "may take judicial notice of the EEOC charging documents appended to [the Complaint] without converting the present motion into a motion for summary judgment because these documents are a matter of public record").

requested the following six additional reasonable accommodations as a prerequisite for returning to work: (1) being allowed to take non-electronic notes; (2) having a quiet part of the office to work; (3) modifying "process . . . to expedite interactivity with his supervisor;" (4) being allowed to work from home as needed; (5) ensuring that any conversations about his performance were kept quiet and confidential; and (6) receiving a faster laptop. (Id. ¶ 52.) On July 13, 2018, AdhereHealth's Director of Human Resources responded to Campbell's requests stating that "[s]etting your own work schedule and working from home as you see fit is not reasonable[,]" and "[y]our request for a new computer has not been demonstrated to be necessary for you to perform the essential functions of your job." (Id. ¶ 54.) The email continued: "To reiterate, once you have exhausted your approved FMLA, your requested accommodations will be considered again. Although your communications continue to avoid them, the expectations for your improvement and your commitment to the same will also be addressed at that time." (Id.)

Three days later, on July 16, 2018, Campbell filed a Charge of Discrimination with the Equal Employment Opportunity Commission's ("EEOC") Nashville Office ("First EEOC Charge"), alleging the following:

> I began working for [AdhereHealth in] December 2015, as a Sr. Ruby Developer. [AdhereHealth] has more than 15 employees.
>
> I am disabled. [AdhereHealth] is aware of my disability. In October 2017, I was written up for my job performance, which is affected by my disability. Prior to and after my write-up I requested reasonable accommodations due to my disability, but many of my requests were denied. I was also subjected to different terms and conditions of employment when my duty description was changed and my work from home privileges were revoked. In April 2018, I was suspended with pay after I requested another reasonable accommodation. I am currently on FMLA and my employer will not allow me to return to work if I require the following reasonable accommodations; to work from home, to come into work at my own discretion, and to receive a new computer. I believe this is in retaliation for requesting reasonable accommodations.
>
> I believe that I have been discriminated and retaliated against based on my disability, in violation of the [ADA].

3

(Doc. No. 1-3 at 2; see also Compl. ¶¶ 9, 58.) On July 24, 2018, the EEOC issued Campbell a Notice of Right to Sue on the allegations in his First EEOC Charge, but stated that "you must file a lawsuit against [AdhereHealth] **within 90 days** of the date you *receive* **this Notice** . . . [or] your right to sue based on the charge referred to in this Notice will be lost." (Doc. No. 1-4 at 3; Compl. ¶¶ 10, 59.)

AdhereHealth terminated Campbell's employment one week later on August 1, 2018, claiming that he "[f]ail[ed] to report for work following expiration of approved leave and fail[ed] to call or directly contact [a] supervisor or Human Resource Representative when absent in violation of [the] Employee Handbook." (Compl. ¶¶ 61–64.) On October 31, 2018, Campbell filed a second Charge of Discrimination with the EEOC ("Second EEOC Charge"), alleging the following:

> I began working for [AdhereHealth] in December 2015 as a Senior Ruby Developer. [AdhereHealth] has more than 15 employees. I am a qualified individual having multiple disabilities. [AdhereHealth] knew of my disabilities. I have been subject to false disciplines, heightened scrutiny, and denied reasonable accommodations. [AdhereHealth] has revoked certain conditions and benefits of my employment, including my ability to telework in response to my disability and perceived disability. [AdhereHealth] terminated my employment during the process of requesting reasonable accommodations, and in retaliation for requesting to engage in the interactive process. I believe other employees who are not disabled and not perceived to be disabled were treated differently, and better than I was based on my disability or perceived disability. I believe that my termination was based on me engaging in protected activity under the [ADA]. I believe I am the victim of discrimination and retaliation prohibited by the ADA and other federal laws.

(Doc. No. 1-5; see also Compl. ¶ 65.) On May 21, 2019, the EEOC issued Campbell a Notice of Right to Sue on the allegations in his Second EEOC Charge. (Doc. No. 1-6.)

Campbell filed this lawsuit on August 19, 2019, alleging that AdhereHealth violated the FMLA (Counts I and II), the ADA (Counts III, IV, and V), and Tennessee common law by causing him emotional distress (Count VI). Pursuant to Federal Rule of Civil Procedure 12(b)(6),

4

AdhereHealth now moves to dismiss portions of Counts III and IV, and the entirety of Counts V and VI. (Doc. No. 11.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The plaintiff need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957) (internal quotation marks omitted), and the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). In short, a complaint must state a plausible claim for relief to survive a motion to dismiss. Id. at 679; Twombly, 550 U.S. at 556.

## III. ANALYSIS

AdhereHealth moves to dismiss Campbell's ADA claims for discrimination (Count III), retaliation (Count IV), and failure to accommodate (Count V), as well as his Tennessee common law claim for intentional infliction of emotional distress (Count VI). The Court will address each of these counts in turn.

### A. ADA Claims for Discrimination, Retaliation, and Failure to Accommodate (Counts III, IV, and V)

AdhereHealth argues that the allegations in Campbell's First EEOC Charge are time-barred and should be dismissed. (Doc. No. 12 at 5–6.) "A plaintiff seeking relief under the ADA must file suit within ninety days of receiving a right to sue letter from the EEOC." McGhee v. Disney Store, 53 F. App'x 751, 752 (6th Cir. 2002) (citations omitted); see also 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). Campbell did not file suit on the allegations in his First EEOC Charge until August 19, 2019, or more than 385 days after he received the EEOC's July 24, 2018 right-to-sue letter.[3] (Compl. ¶¶ 10, 59; Doc. No. 1-4.) Thus, AdhereHealth is correct that the allegations raised in Campbell's First EEOC Charge are time-barred.

Campbell disagrees and argues that his allegations are timely because he filed this lawsuit within 300 days of AdhereHealth's alleged discriminatory acts, and even if those allegations were time-barred, he revived those allegations by filing a second EEOC charge based on the same conduct. (Doc. No. 19 at 3–4.) But Campbell is wrong on both points. First, as a prerequisite to filing a lawsuit under the ADA, an employee must first file a charge with the EEOC within 300 days of the alleged discriminatory conduct, 42 U.S.C. §§ 2000e-5(e)(1); 42 U.S.C. § 12117(a), *and* initiate a civil action within 90 days of receiving the EEOC's right to sue letter, 2000e-5(f)(1). Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 309 (6th Cir. 2000); see also Lewis v. NYC Dept. of Educ., No. 12 Civ. 675(NRB), 2013 WL 5405534, at *5 (S.D.N.Y. Sept. 25, 2013) (noting in dicta that "even if plaintiff had filed a charge with the EEOC in a timely manner, her action would still not have been timely because she failed to file her complaint within ninety days of

---

[3] Although the Complaint does not allege when Campbell received the right-to-sue letter, there is a presumption that a plaintiff "receives the EEOC's [right-to-sue] letter by the fifth day after the indicated mailing date." McGhee, 53 F. App'x at 752. But whether Campbell received the right-to-sue letter when the EEOC issued it on July 24, 2018, or five days later on July 29, 2018, he still waited over 385 days to file this lawsuit.

receiving her Right to Sue letter"). Second, it is well settled that "a plaintiff who misses the 90-day window [cannot] resurrect the same claims by including them in a new EEOC charge, restarting the process and resetting the limitations clock." Hollimon v. Shelby Cnty. Gov., 325 F. App'x 406, 409 (6th Cir. 2009); Spears v. Mo. Dept. of Corr. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000); Soso Liang Lo v. Pan Am. World Airways, Inc., 787 F.2d 827, 828 (2d. Cir. 1986). Indeed, "[c]ourts have generally found that, where an employee files multiple Charges of Discrimination encompassing the same events, the employee's 90-day period to commence suit begins running from the first date on which the EEOC gives the employee notice of the right to sue on one of the charges." Felix v. City and Cnty. of Denver, 729 F. Supp. 2d 1243, 1250 (D. Colo. 2010) (collecting cases).

Given that the allegations raised in Campbell's First EEOC Charge are time-barred, his ADA Failure to Accommodate claim (Count V) must be dismissed in its entirety. To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show, among other things, that he requested a reasonable accommodation for his known disability and his employer failed to provide that accommodation. Aldini v. Kroger Co. of Michigan, 628 F. App'x 347, 350 (6th Cir. 2015) (citation omitted). Count V alleges that AdhereHealth did not "reasonably accommodate [Campbell's] known physical and mental limitations" because it denied Campbell's request for a faster computer, a reduced work schedule, and the ability to telework. (Compl. ¶¶ 168–84.) However, these allegations are time-barred because Campbell's First EEOC Charge alleges that "I requested reasonable accommodations due to my disability, but many of my requests were denied[,]" and "my employer will not allow me to return to work if I require the following reasonable accommodations; to work from home, to come into work at my own discretion, and to receive a new computer." (Doc. No. 1-3 at 2.) Because Campbell's ADA failure to accommodate

7

claim is based solely on time-barred factual allegations, the Court will dismiss Count V as untimely.

The Court's inquiry does not end there for Campbell's ADA discrimination (Count III) and retaliation (Count IV) claims, however, because those claims are based on both timely and untimely allegations. As relevant to the instant motion to dismiss, Campbell can state plausible ADA disability discrimination and retaliation claims only if he sufficiently alleges, among other things, that he suffered an adverse employment action. Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 306 (6th Cir. 2016) (listing elements of ADA discrimination); Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) (listing elements of ADA retaliation). "An adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Lentz v. City of Cleveland, 333 F. App'x 42, 57 (6th Cir. 2009).

The Complaint alleges that AdhereHealth caused Campbell to suffer six potential adverse employment actions: (1) suspending him with pay (Compl. ¶ 134; see also Doc. No. 1-3 at 2); removing his ability to telecommute (Compl. ¶ 136); (3) "refusal to engage in the interactive process" (id. ¶ 142); (4) not allowing Campbell to return to work (id. ¶ 154); (5) "intentional[ly] not contact[ing] . . . [Campbell] after his FMLA leave expired and count[ing] [his] absences" (id. ¶ 155); and (6) terminating Campbell's employment on August 1, 2018 (id. ¶ 156). Campbell is barred from asserting the first four of these potential adverse employment actions because he explicitly raised them in his First EEOC Charge, meaning they are now time-barred.[4] (See Doc. No. 1-3 at 2 ("I requested reasonable accommodations due to my disability, but many of my

---

[4] Moreover, the Sixth Circuit has held that being suspended with pay does not constitute an adverse employment action. Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 594 (6th Cir. 2007); Peltier v. United States, 388 F.3d 984, 988 (6th Cir. 2004).

8

requests were denied[,] . . . I was suspended with pay[,] . . . and [AdhereHealth] will not allow me to return to work. . . .").) It is unclear whether Campbell raised the fifth potential adverse action in his First EEOC Charge, but in any event, the Court cannot discern any cognizable adverse employment action to support an ADA discrimination or retaliation claim based on AdhereHealth "not contact[ing]" Campbell or counting his absences. Nor has Campbell offered any legal authority to suggest otherwise.

That just leaves Campbell's allegation that he suffered an adverse employment action when AdhereHealth terminated him. Although a plaintiff cannot "resurrect the *same claims* by including them in a new EEOC charge, . . . [t]he existence of a past discriminatory[,] [time-barred] act 'does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.'" Hollimon, 325 F. App'x at 409. Here, Campbell raised his termination for the first time in his Second EEOC Charge and timely filed a lawsuit. And even though Campbell's termination is related to some of the allegations raised in the First EEOC Charge, it is a "distinct discriminatory" act that Campbell can challenge separately from his time-barred claims. Id. Accordingly, Campbell may proceed on Counts III and IV under the theory that his termination constituted an adverse employment action. But to the extent Campbell's ADA discrimination and retaliation claims are based on an adverse employment action *other than his termination*, they are time barred.

B. Intentional Infliction of Emotional Harm Claim (Count VI)[5]

AdhereHealth also moves to dismiss Campbell's Tennessee common law claim for intentional infliction of emotional distress (Count VI) as untimely. (Doc. No. 12 at 7.) As an initial

---

[5] Count VI of the Complaint alleges a cause of action for the "tort of outrage and intentional infliction of emotional harm." (Doc. No. 1 at 24). But because the Tennessee Supreme Court in Rogers v. Louisville Land Co. held that "courts and litigants should no longer refer to 'outrageous conduct' as a separate, independent cause of action, nor as a synonym for the tort of intentional

9

matter, AdhereHealth's argument is deemed unopposed under this Court's Local Rules because Campbell never filed a response in opposition. See L.R. 7.01(a)(3). The same is true under Sixth Circuit case law. See, e.g., Humphrey v. U.S. Attorney Gen.'s Office, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that when plaintiff fails to respond to an argument in defendant's motion to dismiss, any opposition is waived).

However, even if the Court found that Campbell did not waive his intentional infliction of emotional distress claim by failing to respond to AdhereHealth's argument, the Court would still dismiss that claim based on the relevant statute of limitations. "[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations" in Tenn. Code. Ann. § 28-3-104. Leach v. Taylor, 124 S.W. 3d 87, 91 (Tenn. 2004). The Complaint alleges that AdhereHealth engaged in "reckless, extreme and outrageous" conduct during Campbell's employment, but it does not allege that this conduct continued after Campbell's termination on August 1, 2018. (See Compl. ¶¶ 185–89.) Because any alleged wrongful conduct by AdhereHealth must have ended by August 1, 2018, and Campbell did not bring this lawsuit until over a year later on August 19, 2019, his intentional infliction of emotional harm claim must be dismissed as time-barred under Tenn. Code. Ann. § 28-3-104.

## IV. CONCLUSION

For the foregoing reasons, AdhereHealth's Motion to Dismiss (Doc. No. 11) will be granted. Counts V and VI of the Complaint will be dismissed in their entirety, and Counts III and IV will be dismissed except to the extent they are based on allegations related to Campbell's employment termination on August 1, 2018.

---

infliction of emotional distress," the Court will refer to Count VI only as a claim for intentional infliction of emotional distress. See 367 S.W.3d 196, 205 (Tenn. 2012).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE